# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00062-SCT

*MICHAEL L. PITTS AND STEPHANIE A. PITTS*

*v.*

*CHARLES D. WATKINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/2003 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LOGAN SHANE TOMPKINS |
| | JOSEPH N. STUDDARD |
| ATTORNEY FOR APPELLEE: | TODD BRITTON MURRAH |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 04/14/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Michael L. and Stephanie A. Pitts filed a Complaint on November 21, 2002, against Charles D. Watkins alleging breach of duty, misrepresentation, breach of contract, gross negligence and negligence, all stemming from a home inspection performed by Watkins.  In response, Watkins filed a motion for summary judgment and argued that all claims arising out of the Home Inspection Agreement should be resolved through arbitration and that the limits of liability clause prohibited any recovery for damages beyond the fee paid for the inspection. The Circuit Court of Lowndes County, Mississippi, granted the summary judgment motion in its entirety.

**FACTS**

¶2.    In the spring of 2000, Michael and Stephanie Pitts became interested in purchasing a home located at 14 Shadow Ridge, Columbus, MS 39702.  In March, 2000, they employed Charles D. Watkins to perform a home inspection to determine the condition of the property and needed repairs.  The Pittses, Watkins and the realtor performed a "walk through" of the home, during which the Pittses requested Watkins's opinion after noting areas of concern, including the kitchen and laundry room floors.

¶3.    Immediately following the completion of his inspection, but before providing the Pittses with his report, Watkins presented Mr. Pitts with an agreement to be signed concerning the inspection.  Mr. Pitts signed the agreement, and the Pittses subsequently received a copy of Watkins's written inspection report.  Thereafter, they purchased the home.

¶4.    The Pittses claim that, after about six months, they began to notice various problems with the house, including tiles in the kitchen and laundry area separating and lifting off the floor; problems with the dryer vent; and water accumulation under the center of the house.  The Pittses allege that all these problems should have been identified in Watkins's home inspection report.

¶5.    The Pittses now appeal the trial court's grant of Watkins's motion for summary judgment.

**ANALYSIS**

¶6.    The standard for review we apply to summary judgment is familiar and has been recited by this Court in numerous cases:

The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.

*Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996) (citing *Mantachie Nat. Gas Dist. v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992)).

¶7. "[T]here can be no doubt that when addressing arbitration issues, we have readily acknowledged that there is a strong federal policy favoring arbitration." *Pre-Paid Legal Servs., Inc. v. Battle*, 873 So. 2d 79, 84 (Miss. 2004). "This Court 'will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." *Id.* at 82 (quoting *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 721- 22 (Miss. 2002)). However, "applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 711 (Miss. 2002) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)).

¶8. Because this Court finds that the arbitration clause and the limitation of liability clause are substantively unconscionable, these issues are dispositive of the case and other issues raised by the Pittses are not discussed.

¶9. "Substantively unconscionable clauses have been held to include waiver of choice of forum and waiver of certain remedies." *East Ford,* 826 So. 2d at 714. "Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive." *Id. See also Russell v. Performance Toyota*, *Inc.,* 826 So. 2d 719 (Miss. 2002).

¶10. The arbitration clause in the case sub judice is substantively unconscionable. The arbitration clause provides an avenue for Watkins to pursue his claims in a court of law, while requiring the Pittses to arbitrate. The arbitration clause in the Inspection Agreement reads as follows: "Any dispute concerning the interpretation of this Agreement or arising from the Inspection and Report *(unless based on payment of fee)* shall be resolved by . . . arbitration." (emphasis added.) By signing the agreement, Pitts agreed to pay $265 for the performance of the Inspection services. If Pitts were to breach the contract by failing to pay the inspection fee to Watkins, Watkins would be able to pursue his claim in a court of law. The contract states the following with respect to failing to pay the inspection fee: "Should you fail to timely pay the agreed upon fee(s), you shall be responsible for paying any and all fees associated with collection, including but not limited to administration costs, attorney's fees, and cost of litigation." These terms unreasonably favor Watkins. The language included in the clause, "(unless based on payment of fee)," maintains Watkins's ability to pursue a breach by Pitts in a court of law, while Pitts is required to arbitrate any alleged breach by Watkins. This arbitration clause is clearly one-sided, oppressive, and therefore, substantively unconscionable.

¶11. Substantive unconscionability also exists with respect to the limitation of liability clause. After an inspection, the purchaser makes a decision involving thousands of dollars – whether to buy the house or not -- and that decision is largely based upon a satisfactory

4

inspection report. At that point, many decisions including the aesthetics, the amenities and the price of the house have been made, and quite often the only issue left is the integrity of the house. If a home inspector is negligent in his or her inspection, the law demands that he or she should be held liable to the extent of his negligence. If the Pittses can establish duty, breach, causation, and damages, then they should be entitled to full legal redress. To do otherwise would allow home inspectors to walk through the house in five minutes, fabricate a report, and escape liability, without any consideration of the consequences of their conduct.

¶12. According to Pitts's affidavit, when Watkins performed the inspection, Pitts pointed out raised areas in the kitchen and laundry room floors, and asked Watkins to provide them with an opinion concerning the condition of the floor. Watkins then informed the Pittses that he found no problems with the floor. The report only stated that the floor was made of vinyl and did not indicate any problems with the floor. If in fact the Pittses are able to prove duty, breach, causation and damages, they should not be limited to $265 in damages when it is alleged that Watkins's negligence caused them to incur $30,000 to $40,000 in damages.[1] This would be an unconscionable result.

¶13. The limitation of liability clause limits Watkins's liability for any wrongdoing at $265 (the amount paid for the inspection), and also states that "you release us from any and all additional liability. There will be no recovery for consequential damages." Again, like in *East Ford*, this clause precludes the plaintiff's ability to collect punitive damages, if otherwise warranted, but more importantly places an unreasonable restriction to collect compensatory

---

[1]Indeed the record reflects substantial damage, as Watkins made an offer to settle for $10,000 which was refused, and then solicited a counter offer in excess thereof.

damages in excess of $265. This Court has held that, "[c]lauses that limit liability are given strict scrutiny by this Court and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.,* 857 So. 2d 748, 754 (Miss. 2003).

¶14.   In *Lucier v. Williams*, 841 A. 2d 907 (N.J. Super. Ct. App. Div. 2004), a limitation of liability provision in a home inspection contract was found unconscionable for the following reasons:

> (1) the contract, prepared by the home inspector, is one of adhesion; (2) the parties, one a consumer and the other a professional expert, have grossly unequal bargaining status; and (3) the substance of the provision eviscerates the contract and its fundamental purpose because the potential damage level is so nominal that it has the practical effect of avoiding almost all responsibility for the professional's negligence.

*Id.* at 912.   The limitation of liability clause in *Lucier* limited damages at $500 or 50% of the fee paid by the client, whichever was smaller. *Id.* at 909.   Limiting homeowners to a recovery of the inspection fee and not allowing the recovery of reasonably foreseeable compensatory damages is clearly unconscionable, does not provide a meaningful choice to homeowners, and is unreasonably favorable to the home inspector.   If the home inspector's only consequence is to refund the fee, "there is no meaningful incentive to act diligently in the performance of home inspection contracts," and the inspector will be immunized from the consequences of his own negligence. *Id.* at 912-13.

¶15.   The limitation of liability clause, when paired with the arbitration clause, effectively denies the plaintiff of an adequate remedy and is further evidence of substantive unconscionability.   The Court of Appeals of Ohio, in a case analogous to this one, held that the

6

interaction between an arbitration provision and a limitation of liability clause rendered a home inspection contract unenforceable. ***O'Donoghue v. Smythe***, ***Cramer Co.*** 2002 WL 1454074 (Ohio Ct. App. 2002). *See also* ***McDonough v. Thompson***, 2004 WL 2847818 (Ohio Ct. App. 2004). In ***O'Donoghue***, the home inspection contract limited the inspector's liability at $265, where the cost of arbitration according to the American Arbitration Association was at least $500. The rules of the American Arbitration Association provide that, if the amount of a claim is between $0 - $10,000, there is an initial filing fee of $500. If the claim is between $10,000 - $75,000, the initial filing fee is $750. However, the American Arbitration Association may discretionarily apply its Supplementary Procedures for Consumer-Related Disputes, in which case a consumer may pay up to $375.[2] Although the filing fee is not contained within the record, the arbitration clause in dispute, by reference, incorporates the rules of the American Arbitration Association.

¶16. The Pittses filed affidavits that the inspection failed to discern $30,000 to $40,000 in damages. The limitation of liability clause which limits the Pittses' recovery to $265, in conjunction with an undisclosed arbitration provision of the AAA which would require an

---

[2]The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

initial filing fee of at least $500, would effectively deny the plaintiffs any redress. The deprivation of an adequate remedy resulting from the interaction of these two clauses renders both clauses substantially unconscionable.

¶17. Providing further evidence of substantive unconscionability is the limitations period set forth in the document. Although the specific term was not specifically raised by the Pittses, they raised substantive unconscionability of the entire contract, which may be found when the terms of the contract are oppressive. *Russell*, 826 So. 2d 719. After reviewing the contract in its entirety, including all terms, the document purports to establish its own one-year statute of limitations, in contradiction to the three-year statute of limitations set forth in Miss. Code Ann. § 15-1-49 (Rev. 2003).

¶18. The document contains the following provision: "Any legal action arising from this Agreement or from the Inspection and Report, including (but not limited to) the arbitration proceeding more specifically described above, must be commenced within one (1) year from the date of the Inspection." This is in direct contradiction of Miss. Code Ann. § 15-1-49 which provides for a three-year statute of limitations. This period of limitation cannot be changed by contract, and any such change in the limitations period shall be null and void. Miss. Code Ann. § 15-1-5 (Rev. 2003). The attempt to create a private statute of limitations is further evidence of overreaching by Watkins, is oppressive, violates statutory law and is likewise unconscionable.

¶19. Unconscionability has been defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). A

8

breach by the Pittses of nonpayment would result in Watkins's ability to pursue an action within the courts. However, a breach by Watkins, would limit the Pittses to a recovery of $265, the arbitration of which would require fees in excess of their possible recovery.

## CONCLUSION

¶20. The limitation of liability clause and the arbitration clause are substantively unconscionable. The arbitration clause unreasonably favors Watkins because it reserves Watkins's ability to pursue claims in a court of law but requires the Pittses to arbitrate their disputes, and as such should be declared substantively unconscionable. Additionally, the attempt to shorten the statute of limitations is oppressive and in violation of statutory law. It is also substantively unconscionable to limit the Pittses' recovery to $265 when the alleged negligence of Watkins caused them to incur thousands of dollars in damages. Furthermore, the interaction of the limitation of liability clause with the arbitration clause renders the Pittses without a meaningful remedy. All three clauses are therefore unenforceable. Therefore, this Court reverses the judgment of the Lowndes County Circuit Court and remands this case to that court for further proceedings consistent with this opinion.

¶21. **REVERSED AND REMANDED.**

**WALLER, P.J., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J. AND COBB, P.J. DIAZ, J., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, DISSENTING:**

> "A cent or a pepper corn, in legal estimation, would
> constitute a valuable consideration."

9

*Whitney v. Stearns*, 16 Me. 394, 397 (1839).

¶22.	The majority today tinkers with the freedom to contract. Because I believe today's decision lacks fidelity to the law of contracts, I respectfully dissent.

¶23.	Refusing (as he should have) to inquire into the adequacy of consideration provided to Mr. and Mrs. Pitts under the inspection contract, the trial judge granted Watkins's Motion for Summary Judgment, holding:

> The Court finds that the Home Inspection Agreement signed by the home owner contains an Arbitration Clause which states that all disputes arising from the house inspection and/or report shall be resolved by arbitration conducted in accordance with the rules of the American Arbitration Association. The Compliant in this cause alleges that the Plaintiffs suffered monetary damages due to the Defendant's failure to properly inspect and report problems with the residence's floors and roof. The Court feels that this said failure to properly inspect and report any existing problems should be considered as a dispute arising from the house inspection and as such be handled by an arbitrator pursuant to the contract's arbitration clause. The Court further finds that all pending motions that have been filed before this Court should also be heard by the arbitrator.

¶24.	Based almost completely on the conclusion that the contract was not fair to the Pittses, the majority reverses the trial court and declares that the subject contract was substantively unconscionable and, therefore, unenforceable.

*Substantive unconscionability*

¶25.	This Court recognizes two types of contractual unconscionability: procedural and substantive. ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 714 (Miss. 2002), citing ***Pridgen v. Green Tree Fin. Servicing Corp***., 88 F. Supp. 2d 655 (S.D. Miss. 2000) (other citations omitted). In discussing the distinguishing features of the two, the ***East Ford*** Court stated:

> Procedural unconscionability may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic

10

language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms".

826 So. 2d at 714. This Court went on to say that "substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive." *Id*. *See also Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 725 (Miss. 2002) ("Substantive unconscionability may be found when the terms of the contract are of such an oppressive character as to be unconscionable.").

¶26. The majority holds that both the arbitration and limitation of liability clauses are substantively unconscionable and thus oppressive. In a display of admirable discipline, the majority refrains from finding procedural unconscionability. Thus, we are left to search the challenged provisions for substantive unconscionability, that is, oppression.

*The arbitration provision*.

¶27. The specific arbitration clause the majority finds substantively unconscionable provides:

> **Arbitration** - Any dispute concerning the interpretation of this Agreement or arising from the inspection and Report (unless based on payment fee) shall be resolved by binding, non-appealable arbitration conducted in accordance with the rules of the American Arbitration Association except that the parties shall mutually agree upon an Arbitrator who is familiar with the home inspection industry.

The title of the section of the agreement which includes this provision is written in bold, all capital letters, and reads:

**DISPUTE RESOLUTION AND REMEDY LIMITATION.**

¶28. The language of the arbitration provision is unremarkable, except that it carves out an exception for disputes based on the payment of the fee. The majority finds great inequity in

11

this exception because the majority perceives it as an advantage to Watkins. Specifically, the majority states that the "arbitration clause provides an avenue for Watkins to pursue his claims in a court of law, while requiring Pitts to arbitrate." This is, I believe, an inaccurate paraphrase of the arbitration clause language, which clearly excludes from arbitration any dispute over the fee, whether Watkins brings an action to collect it, or the Pittses bring an action to avoid payment of it. Thus, the assumption that only Watkins may pursue his claim in a court of law is not grounded in the language of the arbitration clause but instead represents a conclusion reached by the majority of how things might turn out. Furthermore, the contract does not require "Pitts to arbitrate," as asserted by the majority. With respect to all other claims under the contract, both parties must arbitrate. The majority strays from the record to conjure up scenarios where this might prove to be unfair. But arbitration is not unfair or less desirable in the eyes of the law just because the Pittses do not want to arbitrate in this particular case. The next customer might prefer arbitration and would, thus, enjoy an advantage. The majority, however, announces that when a party is required under the terms of a contract to arbitrate a claim, that party (in Mississippi) has been oppressed. This begs the question of whether the majority would find "oppressive" a provision which required the parties to arbitrate disputes over the fee, but allowed all other claims to be presented in a court.

¶29. The majority's analysis demonstrates the preconceived notions that settling a dispute over the fee (regardless of who brings it) in court is an advantage to Watkins and that settling all other disputes (regardless of who brings them) in arbitration is also an advantage to Watkins. These conclusions have no foundation whatsoever in the law or the record.

12

¶30. I must concede the unfortunate truth that certain words (such as "unconscionability and "oppression") seem to lose the limited and narrow applicability for which they were originally intended. It requires discipline to uphold as valid a contract which contains terms one believes are unfair, but not quite oppressive. The path which seems pleasing and less fraught with resistence allows a relaxing of the definition to include more this year that the last. Personal opinion might lead one to conclude that the Pittses have an unfair contract. But it is, in my view, certainly not oppressive.

*Absence of meaningful choice*

¶31. Almost thirty years ago, this Court's view of an unconscionable contract was that it was "one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other." ***In re Will of Johnson***, 351 So. 2d 1339, 1341 (Miss. 1977).

¶32. Then, approximately seven years ago, this Court cited with approval a federal district court case which required for unconscionability only that contract terms be "unreasonably favorable" to one party to show unconscionability, but carefully limited its holding by requiring "an absence of meaningful choice on the part of one of the parties." ***Entergy Miss., Inc. v. Burdette Gin Co***., 726 So. 2d 1202, 1207 (Miss. 1998), citing ***Bank of Ind. Nat'l Ass'n v. Holyfield***, 476 F. Supp. 104, 109 (S.D. Miss. 1979).

¶33. The majority completely misreads the "absence of meaningful choice" requirement imposed by ***Entergy Miss., Inc***. Instead of inquiring whether the Pittses had a "meaningful choice" in entering into the contract in the first instance, the majority inquires whether the Pittses had a "meaningful choice" of remedies in the event of breach. The majority states:

> Unconscionability has been defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." A breach by the Pittses of nonpayment would result in Watkins's ability to pursue an action within the courts. However, a breach by Watkins would limit the Pittses to a recovery of $265, the arbitration of which would require fees in excess of their possible recovery.

¶19 (citation omitted). This newly discovered application of "meaningful choice" is novel and without precedent.

¶34. Clearly, the "absence of meaningful choice" requirement of *Entergy Miss., Inc.* refers to whether the party had a meaningful choice in agreeing to the contract. This point is easily understood by simple review of the facts and holding in that case.

¶35. Entergy's contract with its customer required the customer to indemnify and hold harmless the power company for certain injuries related to the power lines. When workers sued the power company to recover damages for injuries they sustained while working on the lines, the power company brought a third-party claim against its customer to enforce the indemnity provision. To find the indemnity provision unconscionable, this Court required a showing of absence of meaningful choice. In finding the requirement was met, this Court observed that the customer "was unable to contract with another party since Entergy was the sole supplier of electricity in the area." 726 So. 2d at 1208 (emphasis added). The Court essentially required that the contract be one of adhesion. *Id*.

¶36. Today, the majority quietly and artfully abandons the "absence of meaningful choice" requirement and merely says that the "terms unreasonably favor Watkins." Although the majority correctly cites *Entergy Miss., Inc.*, and recognizes that an "absence of meaningful choice" was required in that case, we are provided not a single fact which demonstrates that the

14

Pittses signed the contract with Watkins because they had no meaningful choice. In fact, the record clearly demonstrates that the Pittses were free to reject the contract and Watkins's services if they desired, and employ another inspection service. The Pittses purchased the home on May 31, 2000, more than two months after the inspection. It is not even suggested that Watkins was the only home inspection service available. There is simply no credible evidence or argument that the Pittses were without a meaningful choice in contracting for a home inspection.

¶37. The majority, in finding the contract unfair, relies heavily on its view of the cost of arbitration. Specifically, the majority concludes at ¶16:

> The Pittses filed affidavits that the inspection failed to discern $30,000 to $40,000 in damages. The limitation of liability clause which limits the Pittses' recovery to $265, in conjunction with an undisclosed arbitration provision of the AAA which would require an initial filing fee of at least $500, would effectively deny the plaintiffs any redress. The deprivation of an adequate remedy resulting from the interaction of these two clauses renders both clauses substantively unconscionable.

¶38. The majority's claim of an "undisclosed" $500 filing fee to arbitrate is not supported by the record or pleadings. There is no indication whatsoever in this case that either party would be required to pay a $500 filing fee to arbitrate. The Pittses do not even mention it in their briefing to this Court. It seems to me that grounding a decision of this Court on evidence not found in the record would be, well, unfair. It also seems to me that opinions are particularly questionable which require for their justification facts not in the record.

¶39. The primary authority cited by the majority is *East Ford*. But in that case there was no finding of substantive unconscionability. The *East Ford* Court found the subject contract

15

procedurally unconscionable, and then stated, "we find it unnecessary to address Taylor's . . . arguments regarding substantive unconscionability." **East Ford**, 826 So. 2d at 717.

¶40. In any case, today's decision leaves the clear impression that the terms of contracts in Mississippi may not be enforceable if they are found (subjectively) to unreasonably favor one party or the other. In other words, this Court now seems to be in the business of (i) deciding what is an "adequate remedy" for each of the parties under a contract; (ii) making sure each party has what this Court considers an "adequate remedy;" (iii) evaluating and deciding whether each contract term "unreasonably favors" one of the parties; and (iv) making sure each party has a "meaningful incentive to act diligently in the performance" of a contract.

¶41. Thus, our courts must now evaluate consideration and assure that each party to a contract gets what this Court considers a fair deal. I fear that now, citing this case as authority, persons who are perceived to have paid too much for a cap or a chicken may be able to avoid their agreement based on nothing more.[3]

*The limitation of liability clause*

¶42. Because I believe the arbitration provision is enforceable, all disputed matters (including the limitation of liability clause) should be submitted to the arbitrator. However, the same analysis applies. Since the Pittses cannot say they had no meaningful choice, that is, they cannot claim they were forced to do business with Watkins, they should not be allowed to escape the consequences and requirements of their contractual agreement. This is so, in my

---

[3]It is doubtful, however, this would apply to unhappy clients who pay too much to their attorneys.

16

view, notwithstanding that the provisions of the contract seem unfair to five distinguished Justices on this Court, for each of whom I have immense respect.

¶43.    The agreement in dispute is titled:  **INSPECTION AGREEMENT**.  Although I have learned of no legal requirement for its inclusion, the following notice is posted immediately under the title of the document in large, all capital letter print:

> **THIS AGREEMENT LIMITS OUR LIABILITY-PLEASE READ IT CAREFULLY**.

¶44.    The Limitation of Liability clause provides in pertinent part:

> **Limit of Liability** - Due to the nature of the services we are providing, it is difficult to foresee or determine . . . potential damages in the event of negligence or breach of this Agreement by us.  Thus, if we fail to perform the inspection as provided here or are careless or negligent in the performance of the inspection and/or preparing the Report, our liability for any and all claims related thereto is limited to the fee[4] paid for the inspection (unless contrary to state law) and you release us from any and all additional liability.  There will be no recovery for consequential damages.

¶45.    The majority holds that this limit of liability clause is oppressive, substantively unconscionable and unreasonably favorable to Watkins because enforcement of the clause limits Watkins's liability to $265, while the Pittses are left at risk for substantial damages.[5] The majority mixes apples and oranges and misses the salient point.  The majority sees the contract as unfair because it compares Watkins's liability with the Pittses' potential damages, rather than comparing Watkins's liability with the Pittses' liability.  The majority somehow

---

[4]The fee for the home inspection was $265.

[5]The Pittses have not provided any evidence of the amount of their damages other than their own affidavits stating: "It will cost approximately $40,000 to make the repairs to the defects Mr. Watkins did not include in his written report."

17

sees no unfairness in the proposition that Watkins might be held liable for $40,000, when the only damage he could collect from the Pittses is $265.

¶46.    Watkins apparently appreciated this potential "unfairness" from his own point of view, because he included in the contract – in very specific, express terms – a limitation of liability provision which was agreed to by the Pittses.  But Watkins did not leave it at that; he undertook to explain it.  The majority fails to point out that by its express and very specific terms, the Agreement provided that the inspection was a *limited visual examination* and did not claim to be technically exhaustive.  The majority also fails to note that the agreement specifically points out that Watkins "is a generalist and is not a licensed engineer or expert in any specific craft or trade," or that the agreement specifically provided, "The fee charged for this inspection is substantially less than that of a technically exhaustive inspection."

¶47.    In my view, if anything is inherently unfair in this case, it is the majority's conclusion that the Pittses should be allowed to escape the high cost of a "technically exhaustive inspection," and pay only $265 for "a limited visual examination," and then seek a remedy which assumes Watkins should have performed services far beyond "a limited visual examination."  It brings to mind the old saw, "you get what you pay for."  Under a different fact situation, were a lawyer to be hired for $50 to read a deed and comment on the validity of its form, and were the lawyer to say, in a writing agreed by the client, that his or her review is a limited review of the document without researching the public records, I would find nothing unreasonable (certainly nothing oppressive) in the lawyer's limiting his or her liability.

¶48.     In this case, Watkins argues that the fee he charged was directly proportional to the limited inspection and, thus, it was not unreasonable or unfair – and certainly not unconscionable – for liability to be limited.  I agree.

¶49.     As stated supra, the Pittses have not suggested they had no meaningful choice, that is, that absent agreeing to this provision and Watkins's contract, they could not have obtained a home inspection.  Consequently, it is my view that this Court should adhere to the teaching in *Entergy Miss., Inc.*, and decline to find the contract unconscionable.

¶50.     Given that the Pittses were not forced to do business with Watkins, our law heretofore counsels the courts to refrain from inquiring into the adequacy of consideration  flowing to the parties.   This proposition is supported by much authority.   In the past, Mississippi has adhered to the rule that, where parties enter into an agreement, consideration need not be adequate to be sufficient in law.  *York v. Georgia-Pacific Corp*., 585 F. Supp. 1265, 1978 (N.D. Miss. 1984).   By declaring the Pittses' contract substantively unconscionable (oppressive), the majority has clearly inquired into the adequacy of consideration and has found the consideration flowing to the Pittses to be inadequate, that is, unfair.

*The limitations period*

¶51.     The majority gratuitously finds the limitations period set forth in the contract to be unconscionable.   To me, the inclusion of this point in the majority opinion without it having been raised or briefed by either party, is improper.   We do not allow parties to argue issues they did not raise.  We should certainly not base our decisions on the same.

¶52.     In my view, the Pittses have wholly failed to establish the elements necessary to demonstrate that the contract is substantively unconscionable.   The record provides no

19

evidence that the Pittses were without a meaningful choice in obtaining a home inspection. Nor is there evidence that the terms of the agreement were *oppressively* unfavorable to the Pittses.  I would affirm the trial court's judgment that the arbitration provision is enforceable and this matter should be submitted to arbitration according to the terms of the contract.

**SMITH, C.J., AND COBB, P.J., JOIN THIS OPINION.**