# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-IA-01527-SCT

*EAST FORD, INC.*

*v.*

*JAMES E. TAYLOR, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/24/2000 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BRENDA B. BETHANY |
| | C. MICHAEL ELLINGBURG |
| ATTORNEYS FOR APPELLEE: | WILLIAM LISTON, III |
| | BARRY BRIDGFORTH |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED -07/18/2002 |
| MOTION FOR REHEARING FILED: | 8/16/2002; denied 10/3/2002 |
| MANDATE ISSUED: | 10/10/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. East Ford, Inc. appeals to this Court from an adverse ruling in favor of James E. Taylor, Jr., by the Hinds County Circuit Court. Taylor filed suit in the Hinds County Circuit Court against East Ford, Inc. on March 15, 2000, alleging that it had sold him a used truck, which was represented to him as new. Taylor signed an "Offer to Purchase or Lease Vehicle" on the date of the sale which contained an arbitration clause. After Taylor filed suit, East Ford filed a Motion to Compel Arbitration. The circuit court ultimately found the arbitration agreement to be unconscionable. This Court subsequently granted permission for this interlocutory appeal. *See* M.R.A.P. 5.

¶2. This Court writes to express to the bench and bar that we adhere to federal policy favoring arbitration and that arbitration agreements are not per se inherently unconscionable.

¶3. However, where as here, an arbitration agreement is found to be unconscionable pursuant to general state law principles, then it may be invalidated without offending the Federal Arbitration Act. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 1655 (1996)(quoting 9.U.S.C.§ 2).

¶4. We find that the circuit court was correct in holding the arbitration clause unconscionable in this case, and we therefore affirm and remand to the circuit court for a full trial on the merits.

## FACTS

¶5. Relying on the salesman's statement that the truck was "new" and had never been titled, on May 10, 1999, James E. Taylor, Jr. purchased a 1998 Ford F-150 pickup truck from East Ford, Inc. for $22,051.77. Taylor completed the transaction by signing several forms, including an "Offer to Purchase or Lease Vehicle." That agreement provided in pertinent part as follows:

> B. ARBITRATION AGREEMENT: With only the exceptions described below, the parties acknowledge, understand and agree that: (1) any controversy, claim, action or inaction arising out of, or relating to, the transaction evidenced by the OFFER together with any resulting written agreements including, but not being limited to, any finance, lease, insurance and/or vehicle service agreements (the OFFER and all resulting agreements are hereinafter collectively referred to as the "AGREEMENTS"), or any breach thereof, together with any repair or service to the vehicle performed or provided by [East Ford, Inc.], shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules; and (2) judgment of the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction; and (3) the arbitration proceeding shall be conducted in Jackson, Mississippi; and (4) the arbitrator(s) will have no authority to award punitive damages and may not in any event, make any ruling, finding, or award that does not conform to the terms and conditions of the AGREEMENTS; and (5) the AGREEMENTS evidence a transaction involving interstate commerce; and (6) the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. (1947, as amended) shall govern the interpretation and enforcement of this Arbitration Agreement; and (7) the only claims which may arise among the parties which are not subject to this Arbitration Agreement are: (a) claims by [East Ford, Inc.] (including its agents, successors and assigns) that one or more events of default as identified in the AGREEMENTS has occurred on the part of OFFEROR(S) (such claims include, but are not limited to, OFFEROR(S) failure to make payments in compliance with the AGREEMENTS)--the parties agree that all such claims may be pursued in any court of competent jurisdiction; and (b) claims subject to the Arbitration Agreement; and (8) the parties' respective rights and obligations under this Arbitration Agreement will survive the breach, sale, assignment, cancellation, termination, revocation, expiration, novation and/or modification of any or all the AGREEMENTS.

¶6. After buying the truck, Taylor discovered that it was not in fact new, but rather that it had been previously titled to another person. When confronted by Taylor, East Ford's representative initially denied that the truck was sold as new, but when presented with a bill of sale which reflected the truck was sold as new, East Ford merely issued an amended bill of sale which reflected the truck was sold as used. Taylor's expert provided an affidavit in which he stated that the difference in cost between a new truck and the used one is $6,676.77. Taylor subsequently filed suit against East Ford in the Hinds County Circuit Court alleging common law fraud, breach of contract and breach of express warranty. East Ford filed a Motion to Compel Arbitration asserting that Taylor was required to arbitrate the dispute. In response to East Ford's motion, Taylor filed several affidavits, including his own.

¶7. In his affidavit, Taylor states that he signed the Offer to Purchase or Lease Vehicle without being advised of the arbitration agreement. He asserts that he has had no legal training and that he did not wilfully

agree to arbitration. He further alleges that the agreement was not discussed with him. An affidavit provided by the salesman, Bryan Childress, confirms not only that he did not discuss the arbitration agreement with Taylor, but also that Childress had no knowledge that an arbitration agreement was part of the transaction between East Ford and Taylor. Childress's affidavit further states that he had never discussed an arbitration agreement with any of the customers to whom he has sold vehicles, nor had he ever been given any information regarding such an agreement by East Ford.

¶8. The circuit court found the arbitration clause to be unconscionable and, therefore, denied East Ford's Motion to Compel Arbitration. East Ford then filed a Petition for Interlocutory Appeal with this Court, which we subsequently granted.

## STANDARD OF REVIEW

¶9. The grant or denial of a motion to compel arbitration is reviewed de novo. ***Webb v. Investacorp, Inc.,*** 89 F.3d 252, 256 (5th Cir. 1996). In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement.

¶10. In the present case, the outcome of the first prong is not disputed. Under the second prong, the United States Supreme Court has stated the question is "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.***, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed. 2d 444 (1985) (citations omitted). Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act. ***Doctor's Assocs., Inc. v. Casarotto***, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed. 2d 902 (1996).

## ANALYSIS

## I. WHETHER THE ARBITRATION CLAUSE IS UNCONSCIONABLE.

¶11. The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act establishes a "'federal policy favoring arbitration,'...requring that 'we rigorously enforce agreements to arbitrate.'" ***Shearson/Am. Exp., Inc. v. McMahon***, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed. 2d 185 (1987) (citations omitted). "Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that 'would provide grounds for the revocation of any contract,' the Arbitration Act 'provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability.'" ***Id***. (citations omitted). "[Q] uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration...The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." ***Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.***, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). This Court has adopted this preference for arbitration. See ***Smith Barney, Inc. v. Henry***, 775 So. 2d 722 (Miss. 2001); ***I.P. Timberlands Operating Co. v. Denmiss Corp.***, 726 So. 2d 96, 103-04 (Miss. 1998); ***Hutto v. Jordan***, 204 Miss. 30, 36 So. 2d 809, 812 (1948).

¶12. It has been recognized that in order to determine whether legal constraints exist which would preclude arbitration, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." **Bank One, N.A. v. Coates**, 125 F. Supp. 2d 819, 827 (S.D. Miss. 2001) (quoting **Webb v. Investacorp, Inc.,** 89 F.3d 252, 257 (5th Cir. 1996)). However, "[c]ourts may not . . . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." **Doctor's Assocs., Inc. v. Casarotto**, 517 U.S. at 687, 116 S.Ct. at 1655 (quoting **Allied-Bruce Terminix Cos. v. Dobson**, 513 U.S. 265, 281, 115 S.Ct., 834, 843, 130 L.Ed. 2d 753 (1995); **Perry v. Thomas**, 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 2527 n.9, 96 L.Ed 2d 426 (1987)). In other words, the usual defenses to a contract such as fraud, unconscionability, duress, and lack of consideration may be applied to invalidate an arbitration agreement, so long as the law under which the provision is invalidated is not applicable only to arbitration provisions. It was under this prong that the trial court found the arbitration agreement to be unconscionable.

¶13. The courts have recognized "two types of unconscionability, procedural and substantive." **Pridgen v. Green Tree Fin. Servicing Corp.,** 88 F. Supp. 2d 655 (S.D. Miss. 2000) (quoting **York v. Georgia-Pac. Corp.**, 585 F. Supp. 1265, 1278 (N.D. Miss.1984)). Procedural unconscionability may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." **Id.**

¶14. Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. **York**, 585 F. Supp. at 1278. Substantively unconscionable clauses have been held to include waiver of choice of forum and waiver of certain remedies. In the present case, Taylor argues that the provision is both procedurally and substantively unconscionable. First Taylor argues that the arbitration provision is procedurally unconscionable because although he signed the provision, he did not read it because the salesman did not tell him that he should. Taylor alleges that at the time he signed the contract, he did not know what arbitration was or that he was agreeing to submit to it. Taylor further argues that the location and the typeset of the terms of the agreement render it unconscionable. East Ford argues that none of these factors render the agreement procedurally unconscionable.

¶15. Taylor further argues that the arbitration provision is substantively unconscionable because, under the terms of the agreement, only he is required to arbitrate while East Ford retains the right to pursue most, if not all, of its claims against Taylor in a court of law. Furthermore, Taylor points out, that his remedy is limited to actual damages because the arbitration provision prevents an award of punitive damages no matter how egregious the conduct on the part of East Ford might be. East Ford argues that the foregoing reasons are insufficient to find the arbitration clause substantively unconscionable.

¶16. In the case below, the circuit court found the arbitration clause to be both procedurally and substantively unconscionable. The circuit court found in relevant part:

> In the present case, it is clear that an arbitration agreement between Plaintiff and Defendant existed. It is not so clear as to whether the arbitration agreement is enforceable. By reviewing the Offer to Purchase or Lease Vehicle agreement, it is noticeable that certain words are in boldface, large letters which stand out conspicuously to the reader. Defendant states in the Motion to Compel Arbitration that the arbitration agreement appears in bold type. Yet, the Court could not discern any bold printing. The arbitration clause is not in boldface and it appears less than one third the size of many other terms

in the document. As a matter of fact, every detail that is inserted onto the agreement concerning the vehicle Plaintiff purchases is in boldface print. However, the arbitration clause along with the additional terms and status and compensation clause are all in very fine print and regular typing font.

Defendant also states that the arbitration clause is outlined and separated from the remainder of the Offer to Purchase or Lease Vehicle Agreement. From the Courts [sic] examination of the document, the arbitration clause is enclosed in a box setting along with additional terms and status of and compensation clause. The box setting format is used in other parts of the agreement as well. The arbitration clause also does not have any underlining nor any other effect which would alert the reader of the importance of its terms.

Furthermore, the arbitration clause is clearly one-sided. The agreement is a standard, preprinted form unilaterally drafted by East Ford, Inc. The administers of the arbitration agreement, the American Arbitration Association, do not have any authority to award punitive damages. The arbitration clause also states that the only claims which may arise among the parties which are not subject to this arbitration agreement are claims by East Ford, Inc. and those subject to Lemon Law Rights. Even if the consumer proceeds to file a grievance under the Lemon Law, the consumer must first seek resolution before the Dispute Settlement Board. Thus, East Ford is unilaterally allowed to rescind the entire agreement. The only instance where the consumer is allowed to rescind the arbitration agreement is in the purchase of a lemon. East Ford, Inc. has an unfair advantage. Therefore, the arbitration clause in the Offer to Purchase or Lease Vehicle agreement will not be enforced because it is unconscionable both procedurally and substantively.

¶17. In *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202 (Miss. 1998), this Court examined unconscionability.

Unconscionability has been defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." To show that a provision is conscionable, the party seeking to uphold the provision must show that the provision bears some reasonable relationship to the risks and needs of the business.

*Bank of Indiana, Nat'l Ass'n v. Holyfield*, 476 F.Supp. 104, 109 (S.D. Miss.1979) (citations omitted). "'In *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 35 So. 2d 537 (1948), this Court defined an unconscionable contract as '... one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other....' " *In re Will of Johnson*, 351 So. 2d 1339, 1341 (Miss.1977).

*Entergy Miss., Inc.*, 726 So. 2d at 1207.

¶18. We went on to discuss procedural unconscionability:

The indicators of procedural unconscionability generally fall into two areas: (1) lack of knowledge, and (2) lack of voluntariness. A lack of knowledge is demonstrated by a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms. A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the

weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.

*Holyfield*, 476 F.Supp. at 109-10 (citations omitted).

*Entergy Miss., Inc.*, 726 So. 2d at 1207.

¶19. We further found in relevant part:

Procedural unconscionability "is most strongly shown in contracts of adhesion presented to a party on a 'take it or leave it basis.'" *York*, 585 F.Supp. at 1278 (quoting *Holyfield*, 476 F.Supp. at 108).

*Entergy Miss., Inc.*, 726 So. 2d at 1207-08.

¶20. A contract of adhesion has been described as one that is "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print." *Bank of Indiana, Nat'l Ass'n v. Holyfield*, 476 F. Supp. 104, 108 (S.D. Miss.1979) (quoting Restatement 2d, Conflicts, § 203, Comment b). As the Fifth Circuit has held, "[c]ontracts in which one party has minimal bargaining power, also referred to as contracts of adhesion, *are not automatically void*." See *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001) (emphasis added) (citing *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)). Similarly, arbitration agreements are not inherently unconscionable. *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 830 (S.D. Miss. 2001) (citing *Smith v. EquiFirst Corp.*, 117 F. Supp. 2d 557, 564 (S.D. Miss. 2000)). The fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and "the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Entergy Miss., Inc.*, 726 So. 2d at 1207 (quoting *Bank of Indiana, Nat'l Ass'n v. Holyfield*, 476 F. Supp. at 109-10). While *Burdette* concluded that an indemnity clause within a contract of adhesion is presumptively unconscionable, the same is not true for arbitration clauses. *Burdette* involved an agreement to indemnify, which essentially allows a party to contract away or escape liability. Arbitration agreements merely submit the question of liability to another forum - generally speaking, they do not waive liability. Furthermore, Congress has expressed no federal interest in enforcing indemnification agreements as it has in guaranteeing the enforcement of valid arbitration agreements. *See* Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. As noted, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," with any doubt concerning the scope of the agreement resolved in favor of arbitration. *Bank One*, 125 F. Supp. 2d at 827 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. at 24-25).

¶21. As previously stated, the circuit court found in the present case that the arbitration provision appears less than one-third the size of many other terms in the document, appears in very fine print and regular type font. The circuit court further observed that all of the details concerning the vehicle Taylor purchased are in boldface print, while the arbitration provision is not. Additionally, the arbitration provision is preprinted on the document. Taking all of the foregoing into consideration, we find the arbitration clause in this case is procedurally unconscionable.

¶22. Although raised by Taylor below, the circuit court did not address Taylor's lack of consideration argument. Because we find that the arbitration clause in this case is procedurally unconscionable, we find it unnecessary to address Taylor's lack of consideration argument, as well as his arguments regarding substantive unconscionability.

<u>CONCLUSION</u>

¶23. Federal law favors arbitration as is evident from the existence of the Federal Arbitration Act. In disputes in commercial settings we have held that "[a]rticles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So.2d 96, 108 (Miss. 1998) (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). However, where an arbitration agreement is found to be unconscionable pursuant to general state law principles, as is the case here, then the arbitration provision may be invalidated without offending the Federal Arbitration Act. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. at 686, 116 S.Ct. at 1655 (quoting 9 U.S.C. § 2). Therefore, we affirm the judgment of the circuit court and remand this case for a full trial on the merits.

¶24. **AFFIRMED AND REMANDED.**

> **PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. DIAZ, J., CONCURS IN PART. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. GRAVES, J., NOT PARTICIPATING.**

> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶25. I dissent to the majority's announcing that it favors pre-disposition arbitration and adhesion contracts. It is difficult to knowingly and intelligently waive a trial by jury and an arbitration clause in pre-disposition arbitration because the consumer does not actually know what is involved in giving up their rights. For the majority to say that "[a]rbitration agreements merely submit the question of liability to another forum" is disingenuous because arbitration does not allow for the following by a court of law or review, generally punitive damages or discovery, subpoena of witnesses out of state or in state, or some form of damages. It is merely a cost or expense matter.

¶26. While I agree that in some commercial settings arbitration should be allowed as illustrated in *IP Timberlands Operating Co. v. Denmiss Corp*., 726 So.2d 96, 103 (Miss. 1998), arbitration clauses in most consumer contracts involve overreaching, unconscionability, and precluding small business and individuals from pursuing a remedy when wronged via trial by jury which is guaranteed by our Constitution.

¶27. Under the Federal Arbitration Act, automobile dealers were being required to arbitrate any disputes with automobile manufacturers until Congress had to step in and pass a law that released dealers from the strictures of arbitration. See 15 U.S.C. § 1222 (1997). By the same token, individuals and small businesses should be afforded the same rights.

¶28. Article 3, Section 24 of the Mississippi Constitution of 1890 provides that for every injury there shall be a remedy:

> All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.

Article 3, Section 25 of the Mississippi Constitution of 1890 provides that the courts shall be open to all people:

> No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both.

Finally Article 3, Section 31 provides:

> The right of trial by jury shall remain inviolate, but the legislature may, by enactment, provide that in all civil suits tried in the circuit and chancery court, nine or more jurors may agree on the verdict and return it as the verdict of the jury.

¶29. The arbitration clause in the present case clearly forecloses Taylor's constitutional right to a jury trial, as well as his constitutional right to have a judicial remedy for any wrong which he may have suffered at the hands of East Ford. In addition, the clause waives Taylor's right to collect punitive damages against East Ford. This Court has held, "[c]lauses limiting liability are given rigid scrutiny by the courts, and will not be enforced unless the limitation is fairly and honestly negotiated and understandingly entered into." *Farragut v. Massey*, 612 So. 2d 325, 330 (Miss. 1992) (quoting 17 Am.Jur.2d *Contracts* § 297, at 298 n. 74 (1991)). *See also* *Quinn v. Miss. State Univ.*, 720 So. 2d 843, 851 (Miss. 1998). In the present case, it is clear that the arbitration clause was anything but fairly and honestly negotiated and that Taylor did not understandingly enter into the arbitration clause which severely limits his legal rights. Furthermore, the salesperson did not know or understand the arbitration clause.

¶30. In *Iwen v. U.S. West Direct*, 977 P.2d 989 (Mont. 1997), the court found an arbitration provision in a telephone directory advertisement contract to be unconscionable, and in so doing stated:

> Drafted as such, the weaker bargaining party has no choice but to settle all claims arising out of the contract through final and binding arbitration, whereas the more powerful bargaining party and drafter has the unilateral right to settle a dispute for collection of fees pursuant to the agreement in a court of law. . . .U.S. West Direct pointedly protected itself by preserving its constitutional right of access to the judicial system while at the same time completely removed that right from the advertiser.

*Id.* at 995-96. The court went on to hold:

> [T]his case presents a clear example of an arbitration provision that lacks mutuality of obligation, is one-sided, and contains terms that are unreasonably favorable to the drafter. Because U.S. West Direct presented this agreement on a take-it-or-leave-it basis, it is also a contract in which there was no meaningful choice on the part of the weaker bargaining party regarding acceptance of the provisions. Certainly, this does not mean arbitration agreements must contain mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner. This simply restates the rule of law that disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter, as they are in this case, that the agreement becomes unconscionable and oppressive.

*Id.* at 996.

¶31. In the case at bar, the arbitration provision waives Taylor's constitutional right to a jury trial, his right to collect punitive damages from East Ford, and effectively forecloses his right to access to the courts of Mississippi guaranteed by the Constitution of the State of Mississippi, while at the same time preserving East Ford's right to pursue legal action against Taylor in the courts of Mississippi in most of the situations. As such, the arbitration clause lacks mutuality of obligation because it is so one-sided and unreasonably favorable to East Ford, which drafted the provision, that it is unconscionable and oppressive. "Courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent." *United States Fid. & Guar. Co. v. Ferguson*, 698 So. 2d 77, 80 (Miss. 1997) (quoting *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1188-89 (Miss.1990) (citations omitted)).

¶32. Accordingly, I dissent as to the majority's reasoning but concur in the affirmance of the circuit court's order denying arbitration and in the remand of this case for a full trial on merits.

**DIAZ, J., JOINS THIS OPINION.**