# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00382-SCT

*BEDFORD CARE CENTER- MONROE HALL,*
*LLC*

*v.*

*EDNA LEWIS, AS EXECUTRIX OF THE ESTATE*
*OF ORA PRESTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2005 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENJAMIN CONNELL HEINZ |
| | LOUIS HUNTER COMPTON, JR. |
| | WILLIAM R. LANCASTER |
| ATTORNEY FOR APPELLEE: | RICHARD LAJAUNIE |
| | WILLIAM R. COUCH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 01/12/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     In January of 1998, Ora Preston was admitted to Bedford Care Center-Monroe Hall,

LLC ("Bedford") under an admission agreement which did not contain an arbitration

provision. This agreement was signed on her behalf by her nephew, Murphy Preston, her then

co-conservator. In December of 2002, Preston was transferred to the hospital for treatment.

In January of 2003, Edna Lewis ("Lewis"), on behalf of Ora Preston, entered into a second

admission agreement with Bedford which contained an arbitration provision. Prior to this date, the Chancery Court of Forrest County had appointed Lewis as the conservator for the estate and person of Ora Preston. At the time Lewis signed the second admission agreement, she was residing in California. On August 27, 2004, Lewis, on behalf of Ora Preston, filed a lawsuit against Bedford alleging that acts of negligence and gross negligence occurred while Ora Preston resided at the nursing home operated by Bedford.

¶2.     Bedford filed a Motion to Compel Arbitration based on the arbitration provision in the second admission agreement. The circuit court denied Bedford's Motion to Compel Arbitration, and on February 17, 2005, Bedford filed its Notice of Appeal to this Court. On appeal, Bedford argues the Circuit Court of Forrest County erred in denying its Motion to Compel Arbitration.

### DISCUSSION

¶3.     We apply a *de novo* standard when reviewing a decision on a motion to compel arbitration. ***East Ford, Inc. v. Taylor,*** 826 So.2d 709, 714 (Miss. 2002); ***Russell v. Performance Toyota, Inc.***, 826 So.2d 719, 721 (Miss. 2002).

#### I.     Did the circuit court err in denying Bedford's motion to compel arbitration?

¶4.     Bedford argues on appeal that it should be allowed to arbitrate the claims asserted by Ora Preston, by and through her conservator, Lewis. Bedford contends both Lewis and Bedford gave their mutual assent to the admission agreement, including the arbitration

provision, because Lewis and the Bedford representative signed the admission agreement directly under a sentence which stated:

**THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ AND UNDERSTOOD THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION AND HAS RECEIVED A COPY OF THIS AGREEMENT, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO AND ACCEPTS ALL OF ITS TERMS.**

¶5.    Lewis counters that no arbitration agreement existed between Lewis and Bedford because Lewis did not sign the arbitration provision in the agreement. Lewis contends that because she did not sign the highlighted signature line on page five, directly below the waiver of rights paragraph, she did not intend to agree to arbitration. Lewis also argues her signature on page seven is an indication she agreed with the remainder of the contract.

¶6.    While Lewis does not disagree with the formation of the admission agreement contract as a whole, she does disagree with Bedford that all of the elements necessary for contract formation are present for the arbitration provision.

¶7.    The Federal Arbitration Act, 9 U.S.C., § 1 *et seq.* ("Act") states, in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Sanderson Farms, Inc.* 848 So.2d 828, 834 (Miss. 2003) (quoting 9 U.S.C. § 2).

3

¶8.    In ***McKenzie Check Advance of Mississippi, LLC v. Hardy***, 866 So.2d 446, 452 (Miss. 2002), we noted the strong federal policy favoring arbitration. In ***IP Timberlands Operating Co., Ltd. v. Denmiss Corp.,*** 726 So.2d 96, 103- 04 (Miss. 2001), we expressly overturned a line of case law that disfavored arbitration. This Court also stated that:

> Articles of agreement to arbitrate...are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings.

*Id.* at 106.

¶9.    However, in *McKenzie* we recognized "arbitration is a matter of contract between the relevant parties; no party can be required to arbitrate absent an agreement to do so." *McKenzie*, 866 So.2d at, 452  (quoting ***Rosenblum v. Travelbyus.com, Ltd.,*** 299 F.3d 657, 662 (7th Cir. 2002)

¶10.    The determination of the validity of a motion to compel arbitration requires a court to "conduct a two-pronged inquiry." ***East Ford,***  826 So.2d at 713. The first prong has two considerations: (1) whether there is a valid arbitration agreement, and (2) whether the parties' dispute is within the scope of the arbitration agreement. Under the second prong, the United States Supreme Court has stated that the question is "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Id.*  (quoting ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*** 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed. 444 (1985)).

**A. Existence of a valid arbitration agreement between Lewis and Bedford**

4

¶11.   The disputed arbitration provision is contained on pages five and six, as section "E" in the admission agreement. The top of page five reads: "ARBITRATION - PLEASE READ CAREFULLY", with a line to the right side for the reader's initials. Lewis did provide her initials here to signify she did read the arbitration agreement carefully. At the bottom of page five, in bold print, the last paragraph reads: "**The parties understand and agree that by entering this Arbitration Agreement they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury.**" Directly below this paragraph, Bedford placed an asterisk next to a highlighted signature line with the words "please sign" next to it. Lewis did not sign there.

¶12.   On page six, the last paragraph of the arbitration provision states:

> The Resident and/or Responsible Party understand that (1) he/she has the right to seek legal counsel concerning this agreement, (2) the execution of this Arbitration is not a precondition to the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within 30 days of signature. If not rescinded within 30 days, this Arbitration Agreement shall remain in effect for all care and services subsequently rendered at the Facility, even if such care and services are rendered following the Resident's discharge and readmission to the Facility.

¶13.   Lastly, on page seven of the admission agreement, above the signature line, is a paragraph in bold print that reads:

> **THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ AND UNDERSTOOD THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION AND HAS A RECEIVED A COPY OF THIS AGREEMENT, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO AND ACCEPTS ALL OF ITS TERMS.**

5

Lewis and the Bedford representative provided their signatures below this statement.

¶14.    As alleged in Lewis' sworn affidavit:

1) In January of 2003, she received an admissions packet from Bedford to re-admit Ora Preston to their facilities. She returned a telephone call from someone at the facility and stated she had received the packet and it would take a few days before she could view the videotape included.

2) She was then told she needed to get the packet back to them as soon as possible to meet Bedford's deadline . She stated she would view the tape on January 10, 2003, and return everything to them on January 11, 2003.

3) To the best of her memory and knowledge she had a reservation about agreeing to the arbitration provision in the admissions agreement. Therefore, she did not initial the top of page five, nor did she sign at the bottom of page five or the top of page seven.

4) Approximately one week after returning the packet to Bedford, she received another telephone call stating she had not signed the agreement in certain places. She spoke to that person about the agreement and care.

5) The person who called her went through the packet with her and explained certain portions. Lewis stated she would return the agreement to them correctly signed.

6) Bedford returned the admission agreement to Lewis for more signatures.

7) Lewis initialed the top of page five to signify she had carefully read the arbitration provision. However, she **did not agree** to the provision and **did not sign** at the bottom of page five where indicated and highlighted.

8) Lewis then signed page seven as to the rest of the admission agreement with the understanding that since she did not sign the bottom of page five, she was not agreeing to the arbitration provision.

¶15.    At trial, the circuit court judge heard these facts and concluded that because Lewis did not sign the arbitration provision, she could not be forced to arbitrate her claim because an enforceable arbitration agreement did not exist. Lewis' refusal to sign page five of the admission agreement is evidence that she deliberately and consciously decided not to agree to arbitrate any claims against Bedford, but that she retained her right to have her claims adjudicated in a court of law. We find, based on the facts in this case and Lewis' actions, it is clear that she did not accept the arbitration provision in the admission agreement and, therefore, an enforceable arbitration agreement does not exist.

¶16.    Lewis made a knowledgeable and express decision not to sign the arbitration provision. When she did not sign it, Bedford sent the agreement to her a second time for more signatures. Bedford specifically wanted Lewis to sign the document on every page to denote her acceptance of the entire agreement, including the arbitration provision. When Bedford received the admission agreement from Lewis for the second time, Lewis still had not signed the arbitration provision. Despite Lewis' failure to affix her signature to page five,

as specifically directed by Bedford, Ora Preston was still admitted to the facility. Therefore, Bedford acquiesced to the terms presented by Lewis - acceptance of the admission agreement, excluding the arbitration provision. It would be a gross injustice now to allow Bedford to claim it is an unimportant matter that Lewis did not sign on page five of the agreement. Bedford obviously deemed it important to obtain the signature as evidenced by their two attempts to obtain it. According the uncontested facts, Bedford specifically returned the admission agreement to Lewis in order to secure signatures **on every page**. Despite Lewis' failure to sign the arbitration provision, Bedford allowed Ora Preston to be admitted to their facility. Bedford must take full responsibility for its own contractual negligence, and Lewis should not be penalized for her diligence in refusing to sign the disputed provision and retaining her right to file suit against Bedford.

¶17. Lewis is not the casual consumer who inadvertently overlooked the arbitration provision and did not sign the appropriate page. On the contrary, she carefully and thoroughly reviewed the provision with Bedford and made a deliberate determination that she did not agree to arbitrate and refused to sign the page containing the arbitration provision.

¶18. As this case presents overwhelming and compelling facts in favor of Lewis, we must find the circuit court did not err in denying Bedford's motion to compel arbitration because no enforceable arbitration agreement exists between the parties.

      **B.**     **Scope of the arbitration agreement**.

¶19. Since no valid arbitration agreement exists, we need not discuss this issue.

8

## CONCLUSION

¶20.    For the reasons stated above, we affirm the judgment of the Circuit Court of Forrest County, Mississippi.

¶21.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING**