984 So.2d 283 (2006)
COVENANT HEALTH & REHABILITATION OF PICAYUNE, LP; Covenant Dove, Inc.; Picayune Partners, Inc.; Bond, Johnson & Bond, Inc., n/k/a Covenant Dove, Inc.; and Keri H. Ladner, Appellants
v.
The ESTATE OF Mary Frances LAMBERT, by and through Joseph LAMBERT, individually and as personal representative of the estate of Mary Frances Lambert and on behalf of and for the use and benefit of the wrongful death beneficiaries of Mary Frances Lambert, Appellee.
No. 2005-CA-02223-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied March 25, 2008.
*285 Paul Hobart Kimble, John L. Maxey, Jackson, attorneys for appellants.
F.M. Turner, III, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
IRVING, J., for the Court.
¶ 1. Joseph Lambert filed a wrongful death action against Picayune Convalescent Center (the Center), alleging that his mother, Mary Frances Lambert, suffered personal injuries which led to her death while she was a resident at the Center. The Pearl River County Circuit Court granted partial summary judgment and declared the arbitration agreement unconscionable and unenforceable. Aggrieved, the Center appeals and asserts that the circuit court erred in relying on Pitts v. Watkins, 905 So.2d 553 (Miss.2005), rather than Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507 (Miss.2005), to find the arbitration agreement substantively unconscionable and unenforceable.
¶ 2. Finding error, we affirm in part and reverse and remand in part.

FACTS
¶ 3. On July 23, 2003, Mary died while a resident at the Picayune Convalescent Center. She had been a resident on two separate occasions with admissions on December 7, 2001, and November 29, 2002. At the time of her admission on November 29, 2002, Mary was eighty-six years old and had a seventh grade education. On both occasions, Mary was assessed by the nursing staff, who determined that her memory and cognitive skills were impaired. In addition, Mary's vision was impaired to the extent that she could read only large print.
¶ 4. Mary also suffered from several chronic conditions which prevented her from making informed decisions about her medical care and treatment, business affairs, and legal rights. Therefore, Joseph, who had handled his mother's business affairs for several years, signed the admission agreement as her "responsible party." Mary's signature also appears on the admission agreement; however, Joseph contends in an affidavit that his mother was never asked to sign the agreement in his presence, and due to her limited education, she would have been unable to read and understand the agreement had it been presented to her. The admission agreement contained an arbitration agreement and other provisions which limited Mary's rights and remedies.
¶ 5. Following Mary's death, Joseph brought a wrongful death action, individually, and as the personal representative of Mary's estate, alleging that Mary suffered personal injuries, resulting in her death while a resident at the Center. The Center responded by requesting that the court stay the proceedings and compel arbitration.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 6. We apply a de novo standard of review from a lower court's denial of summary judgment. Citifinancial Retail *286 Servs. v. Hooks, 922 So.2d 775, 779(¶ 16) (Miss.2006). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact. . . ." Id. at 779(¶ 17) (citing M.R.C.P. 56(c)). The party opposing summary judgment must set forth specific facts to establish that there is a genuine issue of material fact for trial. Miller v. Meeks, 762 So.2d 302, 304(¶ 3) (Miss.2000).
¶ 7. The Center contends that its admission agreement is enforceable because admission agreements, when taken in the aggregate, affect interstate commerce, thus bringing such contracts within the scope of the Federal Arbitration Act (FAA). The FAA provides, "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). We agree that the FAA applies, because the arbitration provision is part of an admission agreement "evidencing in the aggregate economic activity affecting interstate commerce." Stephens, 911 So.2d at 515(¶ 18). However, the fact that the FAA applies does not ipso facto mean that the arbitration provision is enforceable. We therefore examine the provision.
¶ 8. The challenged arbitration provision is one of several provisions of the admission agreement. Therefore, for the sake of clarity, we discuss the arbitration provision and the admission agreement separately.
1. The Arbitration Provision
¶ 9. Section F of the admission agreement, entitled "Arbitration," provides as follows:
The Resident and Responsibility Party agree that any and all claims, disputes and/or controversies between them and the Facility or its Owners, officers, directors or employees shall be resolved by binding arbitration administered by the American Arbitration Association and its rules and procedures. The Arbitration shall be heard and decided by one qualified Arbitrator selected by mutual agreement of the Parties. Failing such agreement, each Party shall select one qualified Arbitrator and the two selected shall select a third. The Parties agree that the decision of the Arbitrator(s) shall be final. The Parties further agree that the Arbitrators shall have all authority necessary to render a final, binding decision of all claims and/or controversies and shall have all requisite powers and obligations. If the agreed method of selecting an Arbitrator(s) fails for any reason or the Arbitrator(s) appointed fails or is unable to act or the successor(s) has not been duly appointed, the appropriate circuit court, on application of a party, shall appoint one Arbitrator to arbitrate the issue. An Arbitrator so appointed shall have all the powers of the one named in this Agreement. All Parties here to agree to arbitration for their individual respective anticipated benefit of reduced costs of pursuing a timely resolution of a claim, dispute or controversy, should one arise. The Parties agree to share equally the costs of such arbitration regardless of the outcome. Consistent with the terms and conditions of this Agreement, the Parties agree that the Arbitrator(s) may not award punitive damages and actual damages awarded, if any, shall be awarded pursuant to Section E7.
¶ 10. In East Ford, Inc. v. Taylor, 826 So.2d 709, 713(¶ 9) (Miss.2002), the Mississippi *287 Supreme Court held that courts should conduct a two-pronged analysis when determining whether to enforce an arbitration agreement. "The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the agreement." Id. "Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." Id. at (¶ 10).
¶ 11. Mississippi courts have consistently recognized the existence of a "liberal federal policy favoring arbitration agreements." Terminix Int'l, Inc. v. Rice, 904 So.2d 1051, 1054-55(¶ 7) (Miss.2004) (quoting Russell v. Performance Toyota, Inc., 826 So.2d 719, 722(¶ 6) (Miss.2002)). The Mississippi Supreme Court concluded in Pass Termite and Pest Control, Inc. v. Walker, 904 So.2d 1030, 1032-33(¶ 7) (Miss.2004) (citing Russell, 826 So.2d at 722(¶ 6)), that arbitration is favored and firmly embedded in our federal and state laws.
¶ 12. This Court recognizes the federal and state policy favoring arbitration; however, pursuant to the first prong of East Ford, we must determine whether Joseph and Mary entered into a valid arbitration agreement and whether their dispute comes within the scope of the agreement. The FAA mandates that courts "stay the trial of the action until arbitration has been had in accordance with the terms of the parties' agreement" when the parties have entered into a valid arbitration agreement. 9 U.S.C. § 3.
¶ 13. Joseph contends that there is no basis to argue that an arbitration agreement ever came into existence. He argues that Mary would not have been able to read nor understand the meaning and effect of the admission agreement had it been presented to her. In addition, Joseph contends that, as Mary's health care surrogate, he had authority to make decisions related to her health care, but he did not have authority to waive Mary's constitutional right to a jury trial or her right to collect full legal redress for her damages.
¶ 14. We agree with the trial judge's finding that Joseph, as Mary's health care surrogate, had the authority to make health care decisions pursuant to Mississippi Code Annotated section 41-41-211(2) (Rev.2005). However, we find that the circuit judge erred in finding that health care decisions include signing arbitration agreements. The decision to arbitrate is neither explicitly authorized nor implied within section 41-41-203(h), which defines a health care decision as:
a decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including: (i) selection and discharge of health-care providers and institutions; (ii) [a]pproval or disapproval of diagnostic tests, surgical procedures, programs of medication, and orders not to resuscitate; and (iii) [d]irections to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care.
Furthermore, we find that a genuine issue of material fact exists as to whether Mary actually signed the admission agreement and, if she did, whether she did so knowingly and intelligently.
¶ 15. "It is fundamental in our jurisprudence that questions of fact are for the jury; questions of law are for the court." Fox v. Smith, 594 So.2d 596, 603 (Miss. 1992) (quoting Cantrell v. Lusk, 113 Miss. 137, 144, 73 So. 885, 886 (1916)). Thus, we reverse and remand the circuit judge's finding that Joseph had the authority to *288 bind Mary to the arbitration agreement, and we order that the issue of whether Mary signed the admission agreement and if so, whether she was competent to do so, be presented to a jury for determination.
¶ 16. Joseph also argues that the arbitration provision is substantively unconscionable and therefore unenforceable. Unconscionability is defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207(¶ 11) (Miss.1998). "[T]he party seeking to uphold the provision must show that the provision bears some reasonable relationship to the risks and needs of the business." Id.
¶ 17. Substantive unconscionability is found to exist when the terms of an arbitration agreement are shown to be oppressive. East Ford, 826 So.2d at 714(¶ 13). As previously mentioned, the Center relies upon Stephens to support its argument that the arbitration provision is enforceable. In Stephens, the court considered the same arbitration provision as the one before us and found it conscionable, except the provision prohibiting the award of punitive damages. The court stated that the arbitration clause "provides Stephens with a fair process in which to pursue her claims. Moreover, it is typical of arbitration clauses endorsed by the FAA and is conscionable because it bears `some reasonable relationship to the risks and needs of the business.'" Stephens, 911 So.2d at 521(¶ 37) (quoting Burdette Gin, 726 So.2d at 1207(¶ 11)). In Terre Haute Cooperage v. Branscome, 203 Miss. 493, 503, 35 So.2d 537, 541 (1948), the Mississippi Supreme Court stated that "[a]n `unconscionable contract is one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other.'"
¶ 18. We cannot say that no one in his right mind would ever agree to arbitrate issues which may arise out of the provision of health care service to him. More importantly, as we have already stated, the Mississippi Supreme Court, in Stephens, found conscionable, save the punitive damages provision, the exact arbitration provision before us. Therefore, we are duty-bound to follow this precedent and find that the arbitration agreement, except the provision prohibiting the awarding of punitive damages, is enforceable, subject to a jury's finding that Mary knowingly, willingly, and consciously signed the admission agreement containing the provision to arbitrate.
2. The Admission Agreement
¶ 19. The admission agreement contains Joseph's signature and what purports to be Mary's signature. As stated the admission agreement contains the arbitration provision, but it also contains other provisions which the trial judge found unconscionable. We next examine those provisions.
¶ 20. In Stephens, the court held that "the doctrine of substantive unconscionability invalidates oppressive terms . . . such as terms which violate the reasonable expectations of parties. . . ." Id. at 523. The trial judge found that sections C.5, C.8, D.4, E.5, E.6, E.7, E.8, E.12, E.13, and E.16 of the admission agreement are substantively unconscionable.
¶ 21. During oral argument, the attorney for the Center conceded that the sections are unconscionable. Therefore, we will not burden this record by setting forth in detail each of the sections, nor will we scrutinize the provisions for conscionableness. Rather, based on counsel's affirmation, *289 we find that the enumerated sections are unconscionable and that the circuit judge did not err in striking these sections from the admission agreement. After striking the unconscionable sections, the trial judge, relying upon the provisions of Mississippi Code Annotated section 75-2-302(1) (Rev.2002), ruled that the remaining provisions of the admission agreement were enforceable. The stated code section provides:
(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
¶ 22. The code section upon which the trial judge relied is a provision of the Uniform Commercial Code on sales that applies to contracts in goods. Miss.Code. Ann. § 75-2-102 (Rev.2002). While we find no fault in the trial court's finding, we do question his reliance on section 75-2-302(1), because the stated code section applies to the sale of goods, and the admission agreement is not a contract for the sale of goods. Nevertheless, the admission agreement contains a saving clause which states, "in the event any provision of this [a]greement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of this agreement, which shall remain in full force and effect and [shall be] enforceable in accordance with its terms." In Stephens, the court noted that a saving clause, "explicitly acknowledges the preferred remedy of striking unenforceable provisions as opposed to the draconian remedy of striking the entire agreed upon and otherwise valid contractual arrangements." Stephens, 911 So.2d at 524(¶ 45). Therefore, in accordance with the saving clause of the admission agreement, we affirm the decision of the trial court enforcing the remainder of the admission agreement.

CONCLUSION
¶ 23. This Court affirms the circuit judge's finding that sections of the admission agreement are unconscionable and unenforceable. However, we reverse and remand for a determination of whether Mary signed the admission agreement and if so, whether she did so knowingly and intelligently. If the jury determines that Mary signed the agreement and that she was mentally competent when she did so, the trial must be stayed pending arbitration. The trial judge shall order that the dispute be submitted to arbitration, and that the arbitration provision shall be enforceable, except for the clause prohibiting the award of punitive damages. Likewise, the admission agreement shall be enforceable except as to the unconscionable sections enumerated in this opinion.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.