## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2014-CA-00445-COA

**DAVID RUPPERT AND PAUL FRANKEN**                    **APPELLANTS**

**v.**

**MAV6 HOLDINGS, LLC; MAV6 EMPLOYEE**                    **APPELLEES**
**EQUITY PROGRAM, LLC; A. JAY HARRISON;**
**AND BUFORD C. BLOUNT, III**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2014 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | O. STEPHEN MONTAGNET III |
| | WILLIAM B. BARDWELL |
| ATTORNEY FOR APPELLEES: | CORY T. WILSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEES' MOTION TO |
| | COMPEL ARBITRATION |
| DISPOSITION: | AFFIRMED - 06/09/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

      **BEFORE IRVING, P.J., ISHEE AND CARLTON, JJ.**

      **ISHEE, J., FOR THE COURT:**

¶1.     This case involves a defense-contractor company named Mav6 LLC (Mav6). Mav6 is the operating company tied to Mav6 Holdings LLC (Holdings) and Mav6 Employee Equity Program LLC (MEEP). Collectively, Mav6, Holdings, and MEEP are known as Mav6 Entities (Entities), which was founded by Major General Buford C. Blount III, a decorated war veteran and former commander of the Army's 3rd Infantry Division, and distinguished Navy veteran and former senior executive in the Army A. Jay Harrison, in 2007. The purpose of Holdings was laid out as follows:

(1) to oversee the operations of Mav6[] LLC ("Mav6") to create the leading agile, mid-tier systems integrator and technology innovation company serving the national security community; (2) to exploit [d]efense and commercial market synergies to build a highly differentiated Mav6 brand and diversified revenue stream; and (3) to drive high technology economic development in the State of Mississippi. The foregoing purposes shall be in addition to, and not in limitation of, the general powers of limited liability companies under the Act.

Likewise, the purpose of MEEP was:

(a) to act as a holding company for the employees of Mav6[] LLC ("Mav6") to combine their equity holdings and to secure continuity and stability of the capitalization of the Company; (b) to do and perform all acts necessary and desirable to carry out the foregoing purpose; and (c) to engage in any one or more business[es] or transactions which from time to time may be authorized or approved according to the provisions hereof. The foregoing enumerated purposes shall be in addition to, and not in limitation of, the general powers of limited liability companies under the Act.

¶2.     From January 2008 until March 2012, Paul Franken worked for Mav6 as a nonexecutive employee.[1]  Upon being given equity interests in MEEP, Franken became a member of MEEP and was therefore subject to MEEP's operating agreement, which he acknowledged and signed.  The operating agreement contained the arbitration provision at issue.  David Ruppert worked for Mav6 from April 2008 until June 2012, and served the company as its general counsel and vice president.  Ruppert was granted equity interests in Holdings, and, as a member of Holdings, signed an operating agreement, which contained an arbitration provision identical to the one Franken submitted to through his membership in MEEP.  The arbitration provisions read:

The Members agree that in the event of any dispute or disagreement solely

_____

[1]  The record is unclear as to Franken's exact position.  However, it is certain that he was not an executive.

between or among any of them arising out of, relating to or in connection with this Agreement or the Company or its organization, formation, business[,] or management ("Member Dispute"), the Members shall use their best efforts to resolve any such dispute by good-faith negotiation and mutual agreement. However, in the event that the Members are unable to resolve any Member Dispute, such parties shall first attempt to settle such dispute through a non-binding mediation proceeding. In the event any party to such mediation proceeding is not satisfied with the results thereof, then any unresolved disputes shall be settled by final and binding arbitration conducted in the State of Mississippi. All mediation or arbitration proceedings shall be conducted in accordance with the American Arbitration Association's rules therefor. Judgment upon any award rendered by the arbitrator in a Member Dispute may be filed in any court of competent jurisdiction; the law of the State of Mississippi (excluding conflicts of law provisions) shall apply in any proceeding arising out of or relating to this Agreement.

At the time Franken and Ruppert filed their complaint, Holdings owned 91.41% of Mav6, and MEEP owned the remaining 8.59%. At all times relevant, Blount and Harrison served as managing partners of Holdings. Blount also served as the chairman of Entities, and Harrison served as managing director of Entities.

¶3.    Mav6 operated profitably for several years. Appellees assert that several factors led to the demise of Mav6, including governmental policy shifts associated with the U.S. conflicts in the Middle East, which reduced Department of Defense investments; significant federal defense-oriented spending cuts promulgated in 2011; and a federal investigation of Mav6's CEO, retired U.S. Air Force Lieutenant General David F. Deptula, regarding alleged violations of federal post-employment restrictions.

¶4.    Blount and Harrison maintain that they made every effort to redirect many of Entities' resources and keep the company afloat. Nonetheless, due to a steady decline in profit, they decided to close down the operation in 2014. During the course of the company's closure,

Mav6 offered to buy the equity interests from its employees pursuant to Holding and MEEP's operating agreements. The buyout was accepted by all employees except Franken, Ruppert, and three other members of MEEP. Several months later, Ruppert was discharged for cause, and his interest in MEEP was repurchased.

¶5.    On December 9, 2013, Franken and Ruppert filed suit in the Lamar County Chancery Court contesting the valuation of their interests in Holdings and MEEP and, therefore, the amount of the buyout to which they are entitled. They further asserted derivative claims in Holdings and MEEP on the grounds of fraud and misconduct. Specifically, they asserted that Harrison and Blount breached their fiduciary duties as well as the duty of good faith and fair dealing. On January 17, 2014, Appellees filed a motion to compel arbitration pursuant to the arbitration provisions set forth in the operating agreements of Holdings and MEEP. On March 21, 2014, after a hearing on the matter, the chancery court granted the motion to compel arbitration. It is from that judgment that Franken and Ruppert appeal.

## DISCUSSION

¶6.    The sole question before us today is whether the chancery court was correct in determining that the issue before the court fell within the parties' arbitration agreement such that the motion to compel arbitration should be granted. When reviewing a grant or denial of a motion to compel arbitration, the proper standard of review is de novo. *Century 21 Maselle & Assocs. v. Smith*, 965 So. 2d 1031, 1034 (¶6) (Miss. 2007) (citation omitted).

¶7.    The Mississippi Supreme Court has held that we apply the Federal Arbitration Act when reviewing a motion to compel arbitration. *East Ford Inc. v. Taylor*, 826 So. 2d 709,

4

713 (Miss. 2002). The United States Supreme Court has further stated:

> Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Our supreme court adopted this preference for arbitrability. *Id.* In doing so, the supreme court noted that an arbitration clause should be analyzed under the two-prong test laid out in the Arbitration Act. *Id.* "The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Id.*

¶8. Accordingly, we first look to the question of whether a valid arbitration agreement existed between the parties. Franken and Ruppert assert that the answer to this question is no. They point out that the arbitration clause applies only to a "dispute or disagreement solely between or among any of [the members]" of Holdings and MEEP. On this notion, they continue their argument that the disputes at issue are not limited to "the members" of Holdings and MEEP.

¶9. Specifically, Franken and Ruppert maintain claims against Holdings, MEEP, Harrison, and Blount. The record is quite clear that Harrison and Blount both signed the operating agreement for Holdings, thereby consenting to the arbitration clause and becoming members under the agreement. However, Franken and Ruppert assert that Holdings and MEEP are entities, not members, and therefore do not fall within the provisions of the arbitration

5

agreement.

¶10.    Franken and Ruppert cite to *Freese v. Mitchell*, Nos. 2012-CA-01045-SCT, 2013-CA-00361-SCT, 2014 WL 1946593 (Miss. 2014), as recent support for their contention that the parties to the disputes are not bound by the arbitration agreement.  In *Freese*, two attorneys working on mass-tort cases signed retainer agreements with each of their mutual clients that essentially required arbitration for any disputes "arising out of, or related to" their representation.  *Id*. at *2-3 (¶11).  The retainer agreements did not contain any information about fee-splitting or allocation of expenses among the attorneys.  *Id*. at *3 (¶11).  A joint-venture agreement was also signed between the attorneys but did not contain an arbitration agreement.  *Id*.  at *1 (¶5), *2 (¶10).  After a disagreement between the attorneys regarding their fees, one attorney attempted to invoke the arbitration agreement from the retainer agreements.  *Id*. at *4 (¶18).  However, the supreme court ultimately determined that the fee dispute would fall under the joint-venture agreement, not the retainer agreement, and therefore, no arbitration clause existed.  *Id*. at *7 (¶31).

¶11.    We find the facts of *Freese* are easily distinguished from the facts at hand.  While *Freese* dealt with two agreements that each governed separate issues and one which did not contain an arbitration clause, the facts at hand revolve around two identical agreements with identical arbitration clauses.

¶12.    Nonetheless, we do find applicability in *Freese*'s plain-language reading of the agreements at issue.  The supreme court stated:

> Nothing in the plain language of the [r]etainer [a]greement suggests that the parties intended it to govern internal disputes among attorneys. . . . If the

6

> parties did agree to a separate fee agreement[,] . . . then such agreement is not bound by an arbitration clause. Accordingly, we find that interpreting the [r]etainer [a]greement's arbitration clause to include an internal fee-sharing dispute among attorneys would be inconsistent with the plain language of the [r]etainer [a]greement.

*Id*.

¶13. In the case before us, a simple reading of the plain language on the signature pages of the operating agreements provides the answer to our initial-prong inquiry. As noted by Appellees, all parties associated with Franken and Ruppert's claims are listed as consenting members to the operating agreements in question and, thus, the arbitration agreements therein. Indeed, the record reflects that on the final page of Holdings' operating agreement, "Mav6 Holdings[] LLC" is listed as a member to the agreement signed by "A. Jay Harrison, Managing Director," and "Buford Blount[] III" and "A. Jay Harrison" as "Managing Partners." Likewise, on the last page of MEEP's operating agreement, "Mav6 Employee Equity Program[] LLC" is listed as a member "By: Mav6 Holdings[] LLC, Its Manager, A. Jay Harrison, Managing Director." Hence, it is clear that Franken and Ruppert's assertions that the parties to the disputes do not fall within the arbitration agreement are unfounded.

¶14. Accordingly, we move to the next prong of our inquiry – whether the parties' disputes are within the scope of the arbitration agreements. Each of the identical arbitration agreements define the scope of the agreements as "any dispute or disagreement solely between or among any of them arising out of, relating to[,] or in connection with this Agreement or the Company or its organization, formation, business[,] or management."

¶15. Franken and Ruppert asserted five claims against Appellees at the trial level: (1) that

the directors improperly and fraudulently deceived Mav6's members into not pursuing judicial dissolution of the company when the company's assets were valuable; (2) that the directors of Mav6 and Mav6 directly breached the duty of good faith and fair dealing with respect to payment of Franken and Ruppert's financial interests in the company following the termination of their employment; (3) that Harrison and Blount breached their fiduciary duties to Franken and Ruppert by diminishing the values of all members' financial interests; (4) that Mav6 and its directors wrongfully continue to exercise control over and possession of Franken and Ruppert's financial interests in Holdings and MEEP; and (5) that Mav6 and its directors have breached their fiduciary duties by withholding accounting records from Franken and Ruppert.

¶16.    Each of Franken and Ruppert's claims is associated with Mav6's "organization, formation, business[,] or management," with particular weight toward its business and management.  It is without question that the content of the claims underlying this case fall within the arbitration agreement's plain language.  Franken and Ruppert's claims that the parties and claims involved in this disagreement do not fall within the purview of the arbitration agreements at issue is without merit.  Under the Arbitration Act's two-prong inquiry, we find that the chancellor did not err in granting the Appellee's motion to compel arbitration.

¶17.    **THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**