GRIFFIS, J.,
for the Court:
¶ 1. Citigroup Global Markets, Inc. and Scott Jones (collectively “Citigroup”) appeal the Pike County Circuit Court’s judgment that denied their motion to compel arbitration. Citigroup argues that the circuit court erroneously found that: (1) Citigroup was not a party to the arbitration agreement, and (2) the arbitration agreement was unconscionable. We find reversible error. Accordingly, the judgment of the circuit court is reversed and rendered, and this case is remanded for further proceedings consistent with this opinion.
FACTS
¶ 2. Citigroup is an investment company headquartered in New York with offices in Mississippi. Smith Barney, Inc. is a division of Citigroup. Randy Braswell opened two accounts at Smith Barney in 1996. Braswell executed a client agreement containing a pre-dispute arbitration clause.
¶ 3. On June 17, 2008, Braswell filed his complaint. He alleged that Citigroup (1) failed to follow his instructions regarding his investment accounts, (2) negligently handled his investments, and (3) breached its fiduciary duty. Braswell and Citigroup then filed a joint motion to stay the proceedings pending arbitration.
¶ 4. Two months later, Braswell filed a motion to withdraw the joint motion to *641 stay the proceedings. In support of his motion, Braswell stated that the Financial Industry Regulatory Authority (FIN-RA) — the largest non-governmental regulator of security firms in the United States — prescribes the rules governing arbitration of disputes involving its members. Braswell cited FINRA Rule 12206 that no claim is eligible for submission to arbitration if six years have elapsed since the event giving rise to the claim. Since Braswell’s claims dated back to 1996-more than six years before his complaint was filed — Braswell asserted that his claims were not subject to arbitration.
¶ 5. Citigroup responded with a motion to compel arbitration. Citigroup argued that all of Braswell’s claims fall within the scope of the arbitration agreement. Further, Citigroup stated that the six-year time limit for FINRA arbitration does not apply when a claim is submitted for arbitration by a court. Citigroup cited FIN-RA Rule 12206(c), which states: •
The rule does not extend applicable statutes of limitations; nor shall the six-year time limit on the submission of claims apply to any claim that is- directed to arbitration by a court of competent.jurisdiction upon request of a member or associated person. .
¶ 6. Braswell then filed an amended complaint to add as a defendant Jones, a financial advisor at Smith Barney. Citigroup and Jones responded with another motion to compel arbitration.
¶ 7. The circuit court granted Braswell’s motion to withdraw the joint motion to stay pending arbitration and denied Citigroup’s motion to compel arbitration. The circuit court found that: (1) the arbitration clause failed to encompass claims against Citigroup as a successor of Smith Barney, and (2) the arbitration terms were rendered unconscionable by the merging of all securities-regulatory organizations into one organization — FINRA. Citigroup now appeals.[1]
STANDARD OF REVIEW
¶ 8. We apply a de novo standard of review to the denial of a motion to compel arbitration because the motion presents a question of law as to whether the circuit court has jurisdiction to hear the underlying matter. Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 513 (¶ 9) (Miss.2005) (overruled on other grounds).
 ¶ 9. “In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties’ dispute is within the scope of the arbitration agreement.” East Ford, Inc. v. Taylor, 826 So.2d 709, 713 (¶ 9) (Miss.2002). The second prong of the inquiry is “whether legal constraints external to the parties’ agreement foreclosed arbitration of those claims.” Id. at 713 (¶ 10) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444, (1985)).
¶ 10. Further, “only generally applicable contract defenses, such as fraud, duress, or unconscionability, can be used to invalidate arbitration provisions or agreements” governed by the FAA. Stephens, 911 So.2d at 514 (¶ 11). “Doubts as to the availability of arbitration must be resolved in favor of arbitration. Unless it can be said with positive assurance that an *642 arbitration clause is not susceptible of an interpretation which would cover the dispute at .issue, then a stay pending arbitration should be granted.” IP Timberlands Operating Co., Ltd. v. Denmiss Corp., 726 So.2d 96, 107 (Miss.1998) (internal citations and quotation omitted).
ANALYSIS

1. Is Braswell bound to arbitrate his claims against Citigroup, a successor of Smith Barney?

¶ 11. The circuit court held that the client agreement between Braswell and Smith Barney created an ambiguity as to whether claims against Citigroup, as a successor to Smith Barney, are subject to the arbitration clause contained within the client agreement. Citigroup argues that the client agreement clearly and expressly encompasses Citigroup as Smith Barney’s successor; therefore, Citigroup is entitled to enforce the arbitration agreement.
¶ 12. At issue are clauses six and seven of the client agreement. Clause six contains the arbitration clause, which states:
6. Arbitration
• Arbitration is final and binding on the parties.
• The parties are waiving their right to seek remedies in court, including the right to jury trial.
• Pre-arbitration discovery is generally more limited than and different from court proceedingSs
• The arbitrator’s award is not required to include factual findings or legal reasoning, and any party’s right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
• The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which SB is a member. I may elect which of these arbitration forums shall hear the matter by sending a registered letter or telegram addressed to Smith Barney at 388 Greenwich Street, New York, N.Y. 10013-2396, Attn.: Law Department. If I fail to make such election before the expiration of five (5) days after receipt of a written request from SB to make such election, SB shall have the right to choose the forum.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is .decertified; or (iii) the customer is excluded from the class by the court.
Such forbearance to enforce an agreement to arbitrate shall not constitute a *643 waiver of any rights under this agreement except to the extent stated herein.
(Emphasis added).
¶ 13. Clause seven of the client agreement states:
The provisions of the Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or reopen with SB, and shall inure to the benefit of SB’s present organization or any successor organization or assigns ....
(Emphasis added).
¶ 14. The circuit court found that the client agreement was ambiguous, stating:
[W]hen read as a whole, the contract is ambiguous as to which parties are bound by the contract. In subsection six of the Client Agreement, the plaintiff agreed to resolve all claims through arbitration that might arise with SB or any of its “present or former officers, directors or employees,” and claims arising from any “transaction involving SB or any predecessor firms by merger, acquisition or other business combination....” In subsection seven of the Client Agreement the document states that the provisions of the Agreement shall inure to the benefit of SB’s present organization or any successor organization or assigns.
[[Image here]]
Read alone, the arbitration clause clearly and unambiguously fails to bind any successor of Smith Barney. The -subsequent clause in subsection seven that purports to bind Smith Barney’s successors, creates the ambiguity.
¶ 15. Upon this finding of ambiguity, the circuit court applied rules of contract construction to find that Citigroup, as a successor to Smith Barney, was not a party under the terms of the contract. First, the circuit court construed the language of the contract against Citigroup because Smith Barney was the drafter of the agreement.
¶ 16. Second, the circuit court applied the doctrine of ejusdem generis, which dictates‘that specific contract provisions control over general contract provisions. Clause six contains the specific provision on arbitration, and the circuit court found that it does not name Smith Barney’s successors as parties to the contract. Clause seven contains the general provision, which states that the client agreement binds all of Smith Barney’s successors to all provisions of the agreement. The circuit court concluded that clause six, specific to arbitration, controlled over the general language found in clause seven.
¶ 17. However, we find that the contract unambiguously applies to the successors of Smith Barney; therefore, the circuit court’s application of these rules of contract construction was in error. The supreme court has set out a three-tiered approach to contract interpretation. Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752 (¶ 10) (Miss.2003). First, the “[l]egal purpose or intent should ... be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence.” Id. (citations omitted). “Second[ ], if the court is unable to translate a clear understanding of the parties’ intent, the court should apply the discretionary ‘canons’ of contract construction.” Id. at 753 (¶ 11) (citation omitted). “Finally, if the contract continues to evade clarity as to the parties’ intent, the court should consider extrinsic or parol evidence.” Id. (citation omitted).
¶ 18. We must first look to the four corners of the client agreement to determine whether it was the intent of the parties to arbitrate claims against Smith Barney’s successors. “When construing a *644 contract, we will read the contract as a whole, so as to give effect to all of its clauses.” Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 111 (¶ 10) (Miss.2005). A contract is ambiguous when it “can be interpreted as having two or more reasonable meanings.” Miss. Farm Bureau Cas. Ins. Co. v. Britt, 826 So.2d 1261, 1265 (¶ 14) (Miss.2002).
¶ 19. Reading the client agreement as a whole, we begin with the definition of the term “SB.” The first sentence of the client agreement states:
In consideration of your opening one or more accounts for me ... and your agreeing to act as broker/dealer for me for the extension of credit and in the purchase or sale of securities, commodities, options and other property, it is agreed in respect to any and all accounts, whether upon margin or otherwise, which I now have or may at any future, time have with Smith Barney Inc. or its direct or indirect subsidiaries and affiliates or their successors or assigns (hereinafter referred to as “you” or “your ” or “SB ”), that:....
(Emphasis added). The agreement then contains seventeen separate clauses, one of which is the arbitration agreement found in clause six. It is clear from this first sentence that the parties intended for the term “SB” to refer not only to Smith Barney but also to Smith Barney’s direct or indirect subsidiaries and affiliates or their successors or assigns.
¶20. Accordingly, by its use of the term “SB” the arbitration agreement encompasses successors of Smith Barney in its statement that “all claims or controversies ... between [Braswell] and SB ... shall be determined by arbitration.... ” Clause seven further expresses this intent of the parties by stating: “The provisions of the Agreement shall ... inure to the benefit of SB’s present organization or any successor organization or assigns.”
¶ 21. We find that the contract as a whole unambiguously binds any successor of Smith Barney. Both parties concede that Citigroup is a successor of Smith Barney; thus, Citigroup is a party to the agreement, and Braswell’s claims against Citigroup are encompassed by the arbitration agreement.
¶ 22. We further note that the circuit court denied the motion to compel arbitration as to all defendants, including Jones, an employee of Smith Barney. We find that the arbitration agreement explicitly covers all disputes concerning employees of Smith Barney. Accordingly, Braswell’s claims against Jones are also subject to arbitration.

2. Is the arbitration agreement unconscionable due to the formation of FINRA or the requirement that Braswell pay the entire cost of the arbitration?

¶ 28. Alternatively, the circuit court held that the arbitration agreement was unconscionable. Specifically, the circuit court found that the agreement required Braswell to bear the expense of the entire arbitration, and the agreement purported to give Braswell an option of which self-regulatory organization of which Smith Barney was a member would arbitrate the dispute. However, after the agreement was signed, all of those organizations merged into FINRA. The circuit court found that this effectively left Bras-well with no choice; therefore, the arbitration agreement was oppressive as written.
¶ 24. Unconscionability is defined as “an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.” East Ford, 826 So.2d at 715 (¶ 17) (citation omit *645 ted). There are two types of unconsciona-bility:
Procedural unconscionability may be proved by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms. Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive.
Id. at 714 (¶¶ 13-14) (citation omitted).
¶ 25. Here, because the circuit court found that the agreement was oppressive, we proceed to an analysis of substantive unconscionability. Braswell, as the party opposing arbitration, bears the burden to prove that the terms of the agreement are unconscionable. MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 175 (¶ 21) (Miss.2006). We find that he has failed to meet this burden.
¶ 26. First, he claims that his lack of choice of a forum for the arbitration is unfair. The agreement states that the arbitration will be held before “any self-regulatory organization or exchange of which SB is a member. [Braswell] may elect which of these arbitration forums shall hear the matter by sending a registered letter or telegram addressed to Smith Barney....” Citigroup admitted that, since the signing of the agreement, all of the qualifying organizations have merged into FINRA leaving Braswell no other choice of forum other than FINRA. However, that alone does not render the arbitration agreement unconscionable.
¶ 27. The supreme court ruled on this issue in Cleveland v. Mann, 942 So.2d 108 (Miss.2006). An arbitration agreement between a physician and a patient provided that the arbitration shall be submitted to Judicial Arbitration and Mediation Services, an alternative dispute-resolution service chosen by the physician. Id. at 113 n. 3. The patient argued that the agreement was substantively unconscionable due to the physician’s right to choose the arbitration association. Id. at 116 (¶ 28).
¶ 28. The supreme court held that the agreement was not unconscionable because it provided the patient with a proper forum, stating:
while unconscionably oppressive terms can be facially invalid, a per se finding of substantive unconscionability is strictly applicable only to a provision that by its very language significantly alters the legal rights of the parties involved and severely abridges the damages which they may obtain. The agreement at issue provides [the patient] with a fair opportunity and a proper forum in which to dispute his claims. It does not limit [the patientjs damages, [his] legal rights, or [the doctor and clinic]’s liability. The agreement further provides for arbitration by a neutral association in the business of providing neutral arbitrators.
Id. at 117 (¶ 32) (internal citation and quotation omitted).
¶ 29. Similarly, the arbitration agreement here provides a proper arbitration forum. Braswell has shown no evidence that FINRA arbitration would be biased toward Citigroup or unfair in any other way. The formation of FINRA may have eliminated Braswell’s choice of a forum, but it did not limit his damages or legal rights. Nor did it affect the liability of Citigroup. The legal rights of the parties were not significantly altered; therefore, the agreement is not per se substantively unconscionable because of the formation of FINRA.
¶ 30. Second, Braswell asserts that FINRA’s costly arbitration fees are *646 so oppressive as to prevent or deter him from bringing his claims to arbitration. The circuit court’s order stated that Citigroup’s attorney conceded that the arbitration agreement would require Braswell to bear the expense of the entire arbitration. The circuit court found this to be oppressive.
¶ 31. However, the circuit court’s finding as to fees is not supported by the record. The arbitration agreement found in clause six does not address arbitration fees. Citigroup states in its brief to this Court that it made no such concession that Braswell would bear the entire cost of the arbitration. As there is no transcript of the hearing in the record before us, we are unsure of what was stated to the circuit court. But we do not find the concession supported by the record because the arbitration agreement does not mention fees much less require Braswell to bear the entire cost of the arbitration fees.
¶32. Citigroup states that each party would be required to pay a filing fee and bear their own expense throughout the arbitration process. Braswell does not refute that statement in his brief to this Court. He merely argues that FINRA’s fees are so costly as to be oppressive. He cites to a flow chart of fees that is in the record; however, the ■ flow chart merely names certain fees for services provided by FINRA. The amount of the fees are not listed, nor are we told which of those fees Braswell would be assessed for arbitration in this case.
¶ 33. Furthermore, as Citigroup argues, Braswell has made no showing that his fees for arbitration would be more costly than pursuing his claim in the court system. We have no evidence before us to conclude that Braswell is bound to bear the cost of the entire arbitration or that FINRA’s fees are so costly as to be oppressive. As such, Braswell’s argument that the arbitration agreement is unconscionable is without merit.
¶ 34. The judgment of the circuit court is reversed, and the case is remanded with directions for the circuit court to compel arbitration.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J.

. The Mississippi Supreme Court has held that an appeal may be taken from the denial of a motion to compel arbitration. Tupelo Auto Sales, Ltd. v. Scott, 844 So.2d 1167, 1170 (¶ 10) (Miss.2003).